IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER G., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 CV 5046 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Christopher G.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 15, 27] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 15] is granted and the Commissioner's Motion for Summary Judgement [ECF No. 27] is denied. This case is remanded for further proceedings consistent with the below Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On June 3, 2016, Claimant filed a Title II application for DIB alleging disability beginning on January 2, 2015. (R. 188–89). His claim was denied initially and upon reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 95–104, 106–18, 134). On January 23, 2019, Claimant appeared and testified at a hearing before ALJ Margaret A. Carey. (R. 38–68). ALJ Carey also heard testimony on that date from impartial vocational expert ("VE") Richard Fisher. (R. 68–92). On March 14, 2019, ALJ Carey denied Claimant's claim for DIB. (R. 13–27).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since January 2, 2015. (R. 15). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 15–16). Specifically, Claimant is blind in the right eye and has optic neuralgia, depressive disorder, and anxiety disorder. (R. 15–16). The ALJ further acknowledged several non-severe complaints, including self-reported symptoms of arthritis in the right arm, left foot pain, right ankle pain, alcohol use disorder. (R. 15–16). Claimant also testified that he has tingling in his hands, is at risk for seizures, and has a diagnosis of intermittent

explosive disorder, but the ALJ noted at step two that the medical records do not contain any diagnoses or treatment related to these self-reported symptoms. (R. 16).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16). In particular, the ALJ considered listings 2.02, 12.04, and 12.06 and concluded that Claimant did not manifest clinical signs or findings that meet or equal the criteria of those listings. (R. 16). In so concluding, the ALJ evaluated whether the "paragraph B" criteria had been satisfied and found that it had not. (R. 17–18). She did note, however, that Claimant had limitations in certain broad areas of functioning – namely, a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (R. 17).

The ALJ then found Claimant had the RFC[3] to perform:

> "a full range of work at all exertional levels but with the following nonexertional limitations: Can understand, remember, concentrate, persist, and perform routine, repetitive tasks in a low stress environment defined as having simple work-related decisions and routine changes in the work setting; no interaction with the public and occasional, superficial interaction with coworkers, but no tandem or team tasks; work should be in front of the individual and not coming into his field of vision from the right; and the individual should not be required to read or use the computer more than occasionally." (R. 18).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a bagger, a cooks helper, a fast food worker, and as a cook. (R. 23). This work, however, exceeded Claimant's residual functional capacity, and so the ALJ concluded that Claimant was unable to perform his past relevant work as actually or generally performed. (R. 23). At step five, the ALJ concluded that, considering Claimant's age, education, past work experience, and residual functional capacity, he is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 24–26). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the medium and light exertional levels including as a laundry laborer, a stubber, and a marker. (R. 24). The ALJ then found Claimant was not under a disability from January 2, 2015 through March 14, 2019, the date of her decision. (R. 26–27). The Appeals Council declined to review the matter on February 25, 2019, (R. 1–3), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the

5

decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021)). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. Claimant's Moderate Limitations in Concentration, Persistence, and Pace and the ALJ's Mental RFC

Claimant first raises the familiar issue of whether a restriction to unskilled work adequately addresses a claimant's moderate limitation in concentration, persistence, and pace. Claimant characterizes Seventh Circuit precedent on this issue as a bright-line rule disfavoring such a result, but the Court does not discern the same trend from Seventh Circuit decisions in this area. Rather, the longitudinal arc of these decisions suggests that accommodating concentration, persistence, and pace

limitations requires a very fact specific analysis. Applying those decisions to this particular case, the Court cannot say that the ALJ supported her RFC assessment with substantial evidence. Remand therefore is required, as explained further below.

An ALJ assesses a claimant's RFC between steps three and four of the five-step method for disability claims. See 20 C.F.R. § 416.945(a). Both the RFC assessment and the hypotheticals posed to the VE "must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)); *see also, Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015). "As a matter of form, the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement. As a matter of substance, however, the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019)). Indeed, "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill,* 923 F.3d 492, 498 (7th Cir. 2019)).

The Seventh Circuit has frequently grappled with how ALJs accommodate moderate limitations in concentration, persistence, and pace. In "most cases," the circuit court has concluded that "employing terms like simple, repetitive tasks on

7

their own" in the RFC is not enough to account for a claimant's limitations in concentration, persistence, and pace. *Winsted*, 923 F.3d at 477. This is because, as the Social Security Administration has itself recognized, the "response to the demands of work is highly individualized," and therefore, "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85–15.

In other circumstances, however, a limitation to unskilled work can account for concentration difficulties if the record indicates that it addresses the underlying symptoms. *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (hypothetical included the restrictions that agency reviewers "stated would accommodate [the claimant's] limitations" in concentration, persistence, and pace); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019); *Jozefyk*, 923 F.3d at 497–98 (where the claimant's impairments only surfaced in social settings, the ALJ did not err in limiting claimant to "simple, routine, repetitive tasks" that required limited-to-no social interaction); *Dudley v. Berryhill,* 773 F. App'x 838, 842 (7th Cir. 2019) (holding limitation to "simple, routine and repetitive tasks" and "work requiring the exercise of only simple judgment" accommodated the claimant's stress- and panic-related impairments and concentration difficulties); *Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) (the RFC properly excluded "those tasks that someone with the claimant's limitations would be unable to perform" by including medical expert's proposed concentration-related limitations of "unskilled work involving simple,

8

routine, and repetitive tasks; no fast-paced production line or tandem tasks; only occasional changes in work setting; and GED levels of one or two").

The Court therefore disagrees with Claimant's suggestion that the Seventh Circuit has roundly "rejected the notion that 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" [ECF No. 15] at 5 (citing *Stewart*, 561 F.3d at 68)). Instead, the question to be answered in every case is whether the ALJ has adequately explained, with support from the medical record, how a restriction to unskilled work addresses the claimant's specific concentration, persistence, or pace limitations.

Here, it is not clear to the Court why the ALJ felt a restriction to unskilled work would adequately address Claimant's moderate concentration, persistence, and pace issues. The ALJ did not support her conclusions with the opinions of any of Claimant's treating physicians, as there are no such opinions in the records Claimant submitted.[4] Nor did she rely on the opinions of the state agency psychological consultants, as she (perhaps rightly) deemed their opinions "not persuasive" because "additional evidence was received at the hearing level that was not available at the time these opinions were given." (R. 22). Instead, the ALJ simply asserted that Claimant's mental impairments "have been accounted for" in the RFC, (R. 23), without any explanation as to how in fact that was done, what record evidence

---

[4] While it is Claimant's burden to bring forth medical and other evidence in support of his disability application, 42 U.S.C. § 423(d)(5)(A), the ALJ must still ground her decision in the available record evidence and explain her reasoning. *Wilder*, 22 F.4th 644.

9

supported that conclusion, or why the accommodations in the RFC addressed Claimant's anxiety and depressive symptoms and resulting limitations in concentration, persistence, and pace. This lack of explanation or supporting record evidence leaves the Court to guess how a mental RFC without any apparent persistence or pace accommodations could be said to account for Claimant's particular limitations in this case, and ultimately compels remand in this case.

The contrast between the ALJ's mental RFC assessment and the mental RFC recommended by both state agency psychological consultants is emblematic of the Court's concern with the ALJ's level of explanation on this point. For example, both state agency psychological consultants recommended that Claimant be limited to one or two step instructions because he would not be able to persist for a full work day in an environment requiring multi-step instructions. The ALJ omitted this limitation from her mental RFC, explaining only that the consultants were not aware at the time they formulated their opinions that Claimant had started regularly attending therapy and receiving medication management. *Compare* (R. 18) (ALJ's mental RFC: "routine, repetitive tasks in a low stress environment defined as having simple work-related decisions and routine changes in the work setting; no interaction with the public and occasional, superficial interaction with coworkers, but no tandem or team tasks."); (R. 102, 116) (psychological consultants' mental RFC: Claimant "retains the mental capacity to understand and remember multi-step instructions. Due to his anxiety, depressive symptoms he would have a moderate limitations persisting for a normal work period with multi-step instructions. He could consistently do so for one and two step instructions for a normal work period. He could make work related

10

decisions and could interact and communicate sufficiently in work environment. He could adapt to routine changes and pressures."). But this brief nod to general evidence that entered the record after the consultants formulated their opinions does not illuminate how or whether symptom improvement with therapy and medication allowed Claimant to consistently maintain his concentration and attention under normal job conditions or persist without a limitation to one or two step instructions.

So, unlike recent precedent in *Jozefyk, Dudley, Pavlicek,* and *Saunders,* the lack of medical opinion evidence supporting the ALJ's accommodation for Claimant's moderate limitations in concentration, persistence, and pace with a restriction to, essentially, unskilled work[5] in this case compels remand. Claimant suffered from depressive and anxiety-related symptoms that, according to the state agency consultants and the longitudinal medical evidence, affected at least to some degree his ability to maintain attention and focus or perform activities within a schedule, as opposed to just his ability to learn a complex task. *Robert E.S. v. Comm'r of Soc. Sec.*, 2022 WL 965884, at *6 (C.D. Ill. Mar. 30, 2022); *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period

---

[5] Claimant urges this Court to conclude that the ALJ's reversible error in this case was omitting "language pertaining to the use of judgment" from the RFC to accommodate Claimant's concentration limitations. [ECF No. 15] at 5–6. As explained above, the Court believes remand turns on a different issue in this case – namely, the lack of supporting record evidence for the ALJ's conclusion and the breakdown of the much-maligned "logical bridge" between the record evidence and an ALJ's conclusions. To Claimant's point, however, that an RFC needs a judgment-related limiter to pass muster under recent Seventh Circuit guidance, the Court notes that Claimant was restricted to unskilled work and only jobs requiring unskilled work were identified by the VE in this case. (R. 24–25, 69–73). Unskilled work, by definition, requires the exercise of little to no judgment under the regulations. C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time…a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.").

11

is not the same as the ability to learn how to do tasks of a given complexity."). His symptoms also appear to have affected his ability to persist throughout a normal workday when presented with multi-step instructions, (R. 102, 116), and it is not clear how or whether Claimant's reengagement in therapy or medication management improved upon those symptoms or limitations.

It may very well be that, on remand, the ALJ can provide a well-supported explanation for the same RFC from which the Court could conclude that the RFC does accommodate Claimant's particular limitations. After all, a mild, or even a moderate, limitation in an area of mental functioning does not necessarily prevent Claimant from securing gainful employment. *Sawyer v. Colvin,* 512 F. App'x 603, 611 (7th Cir. 2013). But the ALJ must still build a logical bridge between her acknowledgment of Claimant's mental limitations and the restrictions contained in the RFC, and support that RFC with record evidence, which she did not do here. On remand, therefore, the ALJ should take care to provide the VE with a complete picture of Claimant's conditions in determining her RFC. *Jelinek v. Astrue,* 662 F.3d 805, 813 (7th Cir. 2011). The hypothetical to the VE must include all of Claimant's limitations, including deficiencies of concentration, persistence and pace. *DeCamp*, 916 F.3d at 675; *Moreno*, 882 F.3d at 730. The easiest way to do that is, of course, to simply to ask the VE to consider a hypothetical person who, like Claimant, has a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *O'Connor-Spinner*, 627 F.3d at 619. The ALJ should then explain, with support from the medical record, how the restrictions in the RFC

12

address Claimant's specific mental limitations involving concentrating, persisting or maintaining pace.

## II. The ALJ's Subjective Symptom Assessment

This case already is earmarked for remand, but it bears noting that the Court sees the scope of that remand as relatively limited.[6] Although Claimant also argues that the ALJ erred in her assessment of his subjective symptom statements, the Court does not believe the ALJ need revisit this area of the opinion, unless additional medical evidence provided or obtained on remand changes the ALJ's view of how Claimant's subjective symptom statements corresponds with the longitudinal medical evidence and other SSR 16-3p factors. At least in her opinion now before the Court, the ALJ gave "specific reasons supported by the record" for discounting Claimant's subjective symptom statements and was not patently wrong in doing so. *Deborah M.,* 994 F.3d 789. All that is required of the ALJ is that she explain her subjective symptom evaluation "in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here.

---

[6] In addition to his argument regarding the ALJ's subjective symptom evaluation, Claimant also contends that the VE's testimony was flawed in a number of respects. But unlike the subjective symptom issue, which the Court has chosen to tackle on the merits, Claimant's argument about the VE's testimony – i.e. the evidence provided to him, the particular hypotheticals posed to him, and then the potential job numbers he provided – is inextricably intertwined with the RFC issue for which the Court has remanded. That is, to the extent the ALJ needs to reevaluate (or at least, further explain) Claimant's mental RFC on remand, it is likely that the VE's testimony, including the job numbers or supporting methodologies used, may shift as well. The Court therefore declines to take a position on Claimant's assorted arguments regarding the adequacy of the VE's methodology in this case, in the interest of judicial economy.

An ALJ's evaluation of a claimant's subjective symptom statements is afforded "special deference" and will be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also, Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). SR 16-3p[7] outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. SSR 16-3p, 2017 WL 4790249, *49463; *Wilder*, 22 F.4th at 654. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2017 WL 4790249, *49464; *Wilder*, 22 F.4th at 654. "The ALJ must justify his or her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and

---

[7] Because the ALJ issued her ruling after March 28, 2016, SSR 16-3p, which superseded SSR 96-7p, applies here. But SSR 96-7p and SSR 16-3p "are not patently inconsistent with one another" – instead, a "comparison of the two Rulings shows substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *McCammond v. Colvin*, 2016 WL 3595736 at *3 (N.D. Ill. 2016). SSR 16-3p simply reaffirmed the focus on the regulatory language regarding symptom evaluation and clarified that the "subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p; *see also Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016). The case law discussing both SSR 16-3p and SSR 96-7p therefore is informative on this point.

functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017).

The ALJ properly considered in this case that the medical evidence was at odds with the severity of limitations Claimant described in his disability application and to which he testified at the hearing. An ALJ may view discrepancies with the medical record as probative of exaggeration, *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008), and Claimant's complaints of disabling headaches, dizziness, and severe depressive and anxiety-related symptoms in this case simply were not borne out by the notes and records of his treating physicians and his mental status examinations. The ALJ was entitled to consider as much, for as the Seventh Circuit has emphasized, "[t]here is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)).

So too was it appropriate for the ALJ to consider that Claimant's recent and conservative course of treatment – namely, regular therapy and medication management – appeared to be effective at treating Claimant's depressive symptoms. (R. 20–21); 20 C.F.R. § 404.1529(c)(3)(v). The regulations specifically contemplate that an ALJ will consider a claimant's treatment history, 20 C.F.R. § 416.929(c)(3)(v), and the Seventh Circuit has affirmed that is appropriate. *See, e.g., Prill v. Kijakazi*, 23 F.4th 738, 752–53 (7th Cir. 2022) ("substantial evidence supports the ALJ's finding that pain medications adequately controlled [the claimant's] symptoms so she could perform medium work, subject to the restrictions detailed in the RFC assessment.

15

The ALJ did not err in analyzing the effect of [the claimant's] use of hydrocodone on her ability to work."); *see also, Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming an adverse credibility finding based on the claimant's "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session.").

Similarly, the ALJ permissibly relied on evidence that Claimant's activities of daily living suggested he was not as disabled during the relevant time period as he portrayed himself to be. There are "limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," *Prill,* 23 F.4th at 748, and the Seventh Circuit has "cautioned ALJs not to equate such activities with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated,'" *id.* (quoting *Loveless v. Colvin,* 810 F.3d 502, 508 (7th Cir. 2016)), which the ALJ did here when she noted the contrast between Claimant's assertions of disabling pain and his function report, where he stated he can prepare simple meals, including TV dinners, take out the garbage, wash dishes, drive a car, shop in stores, and care for his young son. (R. 21–22). In sum, the ALJ did not err in weighing Claimant's self-reported daily activities and concluding that they belied the severity and limitations of his claimed symptoms.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 15] is granted and the Commissioner's Motion for Summary Judgement [ECF No. 27] is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    June 6, 2022